No. 24-1994

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER,

Plaintiffs-Appellants,

v.

AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY,

Defendant-Appellee.

_____

Appeal from the U.S. District Court for the Northern
District of Illinois (Hon. Jeremy C. Daniel) No. 1:19-cv-01614

### BRIEF OF APPELLEE AMERICAN BOARD OF PYSCHIATRY
### AND NEUROLOGY

Christopher B. Sullivan
Mitchell Barlow & Mansfield, P.C.
Boston Building
Nine Exchange Place, Suite 600
Salt Lake City, Utah 84111
(801) 998-8888
csullivan@mbmlawyers.com

Darryl Tom
Anne I. Shaw
Shaw Legal Services, Ltd.
540 W. Briar Place, Unit B
Chicago, Illinois 60657
(312) 549-9500
dtom@shawattorneys.com
ashaw@shawattorneys.com

Christopher Keleher
The Keleher Appellate Law Group
1 East Erie, Suite 525
Chicago, Illinois 60611
(312) 448-8491
ckeleher@appellatelawgroup.com

*Attorneys for Defendant-Appellee*
*American Board of Psychiatry and*
*Neurology*

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _24-1994_____

Short Caption: _Emily Lazarou v._ American Board of Pychiatry and Neurology

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

_American Board of Pychiatry and Neurology

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

_Mitchell, Barlow and Mansfield, P.C.; Shaw Legal Services, Ltd.; and The Keleher Appellate Law Group, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        _N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        _N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_N/A

Attorney's Signature: _/s Christopher Sullivan    Date: June 24, 2024

Attorney's Printed Name: _Christopher Sullivan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✔]  No [ ]

Address: _Nine Exchange Place, Suite 600

_Salt Lake City, Utah 84111

Phone Number: _801-910-1886    Fax Number:

E-Mail Address: _csullivan@mbmlawyers.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __24-1994__

Short Caption: __Emily Lazarou v.  American Board of Psychiatry and Neurology__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    __American Board of Psychiatry and Neurology__

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    __Shaw Legal Services, Ltd., Mitchell, Barlow and Mansfield, P.C.__

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
        __N/A__

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
        __N/A__

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    __N/A__

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    __N/A__

Attorney's Signature: _____    Date: __June 14, 2024__

Attorney's Printed Name: __Darryl Tom__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  __540 W. Briar Place, Suite B__

    __Chicago, Illinois 60657__

Phone Number: __773-549-9500__        Fax Number: __773-549-9503__

E-Mail Address: __dtom@shawattorneys.com__

rev. 12/19 AK

Save As      Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __24-1994__

Short Caption: __Emily Lazarou v. American Board of Psychiatry and Neurology__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 __American Board of Psychiatry and Neurology__

_____

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 __Shaw Legal Services, Ltd., Mitchell, Barlow and Mansfield, P.C., The Keleher Appellate Law Group, LLC__

_____

(3)      If the party, amicus or intervenor is a corporation:

   i)      Identify all its parent corporations, if any; and

        __N/A__

   ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        __N/A__

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    __N/A__

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    __N/A__

Attorney's Signature: __s/ Christopher Keleher__      Date: __June 21, 2024__

Attorney's Printed Name: __Christopher Keleher__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✔]

Address: __1 East Erie, Suite 525__

   __Chicago, Illinois 60611__

Phone Number: __312-448-8491__      Fax Number: _____

E-Mail Address: __ckeleher@appellatelawgroup.com__

## TABLE OF CONTENTS

DISCLOSURE STATEMENTS ........................................................... i

TABLE OF AUTHORITIES ........................................................... iii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES ........................................................ 1

STATEMENT OF THE CASE .......................................................... 3

I.    THE LITIGANTS ............................................................... 3

      A.    DEFENDANT ............................................................ 3

      B.    PLAINTIFFS ........................................................... 3

II.   PROCEDURAL HISTORY ...................................................... 4

      A.    THE CASE AT BAR ..................................................... 4

      B.    THE PARALLEL SISTER CASES .......................................... 5

SUMMARY OF ARGUMENT ......................................................... 6

STANDARD OF REVIEW ............................................................ 8

ARGUMENT ....................................................................... 9

I.    STARE DECISIS FORECLOSES THIS SUIT ..................................... 9

II.   MULTIPLE ALTERNATIVE GROUNDS EXIST TO AFFIRM THE DISMISSAL ... 12

      A.    PLAINTIFFS' LEGAL THEORY IS PREMISED ON THE LOGICAL
            FALLACY OF FALSE EQUIVALENCE ...................................... 12

      B.    MOC IS NOT A SUBSTITUTE FOR CMEs .................................. 14

      C.    PLAINTIFFS CANNOT ALLEGE THAT THE ABPN HAS ANY
            FINANCIAL INTEREST IN ANY ACCREDITED CME PRODUCT .......... 17

D.      PLAINTIFFS HAVE FAILED TO PLAUSIBLY PLEAD ACTUAL COERCION OR FORCE ...................................................................... 17

E.      THE ABPN IS NOT A COMPETITOR IN THE CME MARKET ............ 19

III.    PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD .......................... 19

CONCLUSION .................................................................... 22

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULES 32(a)(7) & 32(g), and CIRCUIT RULE 32(c) .................................................. 23

PROOF OF SERVICE ............................................................ 24

TABLE OF AUTHORITIES

CASES                                                                                 PAGE(S)

*Afzal v. Am. Bd. of Internal Med.*, No. CV 22-86, 2022 WL 180218
(E.D. Pa. Jan. 20, 2022) ........................................................................... 16

*Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328 (7th Cir. 2012)........... 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................... 8, 14

*Ass'n of Am. Physicians & Surgeons, Inc., v. Am. Bd. of Med. Specialties*,
15 F.4th 831 (7th Cir. 2021) ...................................................................... 8, 18

*Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*,
No. 14-CV-02705, 2020 WL 5642941 (N.D. Ill. Sept. 22, 2020) ...................... 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................. 8, 10

*Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853
(7th Cir. 2001) ........................................................................................... 11

*DJM Logistics, Inc. v. FedEx Ground Package System, Inc.*, 39 F.4th 408
(7th Cir. 2022) ........................................................................................... 21

*Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754 (7th Cir. 2024) ... 9

*Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ...................... 17

*Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802
(7th Cir. 2021) ........................................................................................... 8, 21

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) .......................... 17

*Kaneria v. Am. Bd. of Psychiatry & Neurology, Inc.*, 832 F. Supp. 1226

(N.D. Ill. 1993) ..................................................................... 18

*Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137 (3d Cir. 2021) .... 5, 9, 20

*Lawline v. Am. Bar Ass'n*, 956 F.2d 1378 (7th Cir. 1992) ............................... 18

*Marrese v. Am. Acad. of Orthopaedic Surgeons*, 977 F.2d 585

(7th Cir. 1992) (unpublished) ................................................. 18

*Michigan v. Bay Mills Indian Community*, 572 U.S. 782 (2014) ..................... 9

*Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453 (7th Cir. 2005) .............. 9

*Payne v. Tennessee*, 501 U.S. 808 (1991) ............................................. 9

*Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397

(7th Cir. 1989) ..................................................................... 18

*Siva v. American Bd. of Radiology*, 38 F.4th 569 (7th Cir. 2022) .......... *passim*

*Wilson v. Cook Cnty.*, 937 F.3d 1028 (7th Cir. 2019) ........................................ 9

STATUTES                                                                    PAGE

Arizona Revised Statutes, Title 32 § 32-1835 ................................... 15

Ark. Code Ann. § 17-95-413(b) (West) ............................................. 15

Ga. Code Ann. § 43-34-46(b) (West) ................................................. 15

Ky. Rev. Stat. Ann. § 311.566(2) & (3) (West) .................................... 15

Iowa Admin. Code R. 653-11.2(2); 653-11(4)(1) ................................... 15

Me. Rev. Stat. tit. 32, § 3271(2) ..................................................... 15

Md. Code Ann., Health Occ. § 14-322 (West) ...................................... 15

Mich. Comp. Laws Ann. § 333.16147 (West)  .................................................... 15

Mo. Ann. Stat. § 334.285(3) (West)  ............................................................... 15

N.C. Gen. Stat. Ann. §§ 90-8.1(b) and -13.2(h)  ............................................... 15

N.D. Cent. Code § 23-16-18 N.D. Cent. Code § 23-16-18  ............................... 15

Okla. Stat. Ann. tit. 59, § 492(g) (West)  ......................................................... 16

S.C. Code Ann. § 40-47- 38(a)  ...................................................................... 16

Tenn. Code Ann. § 63-9-123(4)(b) (West)  ....................................................... 16

Tex. Occ. Code Ann. § 155.003(d-1) (West)  .................................................... 16

Revised Code of Washington, Title 18, Chapter 18.71, Section 18.71.083  ..... 16

## JURISDICTIONAL STATEMENT

The Appellants' jurisdictional statement is complete and correct.

## STATEMENT OF THE ISSUES

I.   Along with this lawsuit, Plaintiffs' counsel filed an identical action against an American Board of Medical Specialties in *Siva v. American Bd. of Radiology* (N.D. Ill. 2019). The *Siva* district court dismissed the complaint, and the Seventh Circuit affirmed. *Siva v. American Bd. of Radiology*, 38 F.4th 569 (7th Cir. 2022). That affirmance prompted the district court here to seek supplemental briefing on *Siva*'s impact, and later, catalyzed dismissals of the first and second amended complaints due to *Siva*'s parallels.

Given that *Lazarou* is a carbon copy of *Siva*, is the doctrine of *stare decisis* implicated?

II.  After three complaints in this antitrust suit, the Plaintiffs cannot claim that the Defendant's maintenance of certification product is a substitute for continuing medical education (CME), that the Defendant has a financial interest in any accredited CME product, that the Defendant engaged in actual coercion or force, or that Defendant is a competitor in the CME market.

Have the Plaintiffs plausibly alleged that the Defendant's 10-year maintenance of certification product is

interchangeable with and a substitute for third-party CMEs?

III.    Plaintiffs demand a fourth opportunity to plead their case because they contend they only had one opportunity to address *Siva*.

Did the district court abuse its discretion in refusing a fourth complaint where Plaintiffs' counsel had litigated *Siva*?

## STATEMENT OF THE CASE

I.    THE LITIGANTS

    A.    DEFENDANT

The American Board of Psychiatry and Neurology (ABPN) is a non-profit, Member Board of the American Board of Medical Specialties (ABMS). The ABPN administers ABMS certification and maintenance of certification (MOC) in psychiatry, neurology, and certain subspecialties. Dkt. 1 at ¶3. Certification is voluntary and not required for a physician to be licensed. Short Appendix of Appellant (A) at 15.

For every ten-year cycle, MOC requires: i) passing a Recertification Examination or completing three Article-Based Pathways; ii) completing 66 Category 1 continuing medical education (CME) credits three times; and iii) completing 24 self-assessment activities three times. A-3.

The ABPN provides no accredited CME products and has no interest (financial or otherwise) in any CME accredited product. A-10. Accredited CMEs are provided by third parties (non-ABMS or ABPN affiliated). A-10. No state requires MOC to be a licensed physician. A-15.

    B.    PLAINTIFFS

Dr. Lazarou was first certified in 2007. Dkt. 1, at ¶94. She "was automatically enrolled in ABPN MOC . . . payed [sic] the required MOC fees, and began complying with other ABPN requirements." *Id.*

Dr. Akhter was first certified in 2005. *Id.*, at ¶103. He "was automatically enrolled in ABPN MOC . . . paid the required MOC fees, and began complying with other ABPN requirements." *Id.* When Dr. Akhter earned ABPN certification in 2005, "he understood it would remain valid for ten years and that he would be required to take the ten-year cognitive MOC examination to maintain his certification." *Id.*, at ¶104.

## II.   PROCEDURAL HISTORY

### A.   THE CASE AT BAR

On March 6, 2019, Plaintiffs filed a three-count putative class action against the ABPN alleging two violations of § 1 of the Sherman Antitrust Act and a state law claim of unjust enrichment. Dkt. 1. The district court dismissed the initial complaint without prejudice. Dkt. 60.

Plaintiffs' first amended complaint equated the ABPN's MOC to other continuing professional development (CPD) products. Dkt. 63. While ABPN's motion to dismiss was pending, the district court directed the parties to file a supplemental brief "addressing any effect of *Siva v. American Board of Radiology*, 38 F.4th 569 (7th Cir. 2022) on this case." Dkt. 83.

The district court dismissed the first amended complaint because Plaintiffs failed to plausibly allege "that MOC and other CPD products are reasonably interchangeable in the minds of psychiatrists and neurologists such that they are part of the same product market." Dkt. 87 at 11 (citing *Siva*, 38

F.4th at 579). The court permitted Plaintiffs to file a second amended complaint based on Plaintiffs' representations "that they may add additional allegations that are consistent with the Seventh Circuit's decision in *Siva*." Dkt. 87 at 22.

The second amended complaint mirrored the legal theories of the prior complaint (and *Siva's* dismissed complaint), substituting the term CME for CPD and adding allegations of states' acceptance of MOC for some required CMEs. *See generally*, Dkt. 94. The district court was not swayed, ruling:

> Like the MOC program in *Siva*, the MOC program described in the second amended complaint is primarily a requirement that participants to obtain educational content rather than a vehicle for providing that content. Even if MOC has *some* educational content by virtue of its Assessment component, the amount of this content, when considered in light of the program's other requirements, is not enough to plausibly render MOC a substitute for CME products.

Dkt. 108 at 18.

B.    THE PARALLEL SISTER CASES

Plaintiffs' counsel here filed two other identical cases against ABMS Member boards: *Siva v. American Bd. of Radiology* (N.D. Ill.) and *Kenney et al. v. American Bd. of Internal Med.* (E.D. Pa). This Court affirmed *Siva's* dismissal. *Siva, 38 F.4th 569*. And the Third Circuit Court of Appeals affirmed *Kenney's* dismissal. *Kenney v. Am. Bd. of Internal Med., 847 F. App'x 137 (3d Cir. 2021)*.

## SUMMARY OF ARGUMENT

The operative complaints in this case and *Siva* are indistinguishable. It is also inarguable that this Court affirmed *Siva*'s dismissal. *See [Siva, 38 F.4th 569](#)*. This of course, implicates the doctrine of *stare decisis*. And absent a compelling reason–such as the prior decision being overruled by a higher court or statute–circuit precedent should be upheld.

Even if Plaintiffs somehow skirt *stare decisis*, Plaintiffs succumb on the merits. The core issue is whether the ABPN's MOC program is a substitute for accredited CME products required to maintain physician licensure. It is not.

First, Plaintiffs' theory of the 'interchangeability' rests on a false comparison. While the products alleged to be tied are the ABPN's initial certification and MOC writ large, Plaintiffs' argument deconstructs MOC down to a single element: third party accredited Category 1 CMEs. Such logic spawns a false comparison of Category 1 CMEs in one context (*i.e.*, physician licensure) to the exact same Category 1 CMEs required in the MOC context.

Second, Plaintiffs fail to plead plausible allegations of "cross-price elasticity," so that MOC and CMEs would be "reasonably interchangeable" to relevant consumers. *See [Siva, 38 F.4th at 578](#)*. Plaintiffs allege the contrary— that MOC is worthless and would never be purchased regardless of the price of CMEs.

Third, Plaintiffs fail to plausibly allege "that the Board itself produces, offers, or otherwise has a financial stake in any accredited CME products." *See Siva*, 38 F.4th at 579. Instead, MOC requires Diplomates purchase CME products from *other* providers. *See id.*

Fourth, Plaintiffs once again plead that the adverse consequences of not maintaining Board certification are imposed by third parties. *See, e.g.*, Dkt. 94 at ¶¶52-57, 64-70, 72. However, this is legally insufficient for the required force or coercion element.

Fifth, Plaintiffs fail to plausibly allege that MOC competes on the merits in that separate CME market. *See Siva*, 38 F.4th at 573-574, 578. Instead, Plaintiffs contend that MOC is effectively useless, (Dkt. 94 at ¶¶136-144), confirming that no physician shopping for CME products would voluntarily purchase MOC.

Finally, Plaintiffs should not be permitted to replead. They invoke no ruling demonstrating the district court abused its discretion. Moreover, in dismissing with prejudice, the district court explained its rationale.

## STANDARD OF REVIEW

The ABPN agrees that this Court's standard of review of a dismissal is *de novo*, however the district court's denial of leave to amend is reviewed for abuse of discretion. *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021).

In turn, under Rule 12(b)(6), Plaintiffs must allege facts giving rise to a plausible inference that they can prove a tying claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint that pleads facts "merely consistent with a defendant's liability, . . . stops short of a line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

These concepts take on added significance in the antitrust context as compliance with this standard avoids "'the potentially enormous expense of [antitrust] discovery in cases with no reasonably founded hope' of success." *Siva*, 38 F.4th at 575 (quoting *Twombly*, 550 U.S. at 559). Put another way, *Twombly* rejects a plead-later approach because "modern antitrust litigation is expensive." *Ass'n of Am. Physicians & Surgeons, Inc., v. Am. Bd. of Med. Specialties*, 15 F.4th 831, 835 (7th Cir. 2021). This point is even more pronounced where the possibility of a class action looms. *Twombly*, 550 U.S. at 559.

## ARGUMENT

I. *STARE DECISIS* FORECLOSES THIS SUIT.

This Court's decision in *Siva, 38 F.4th 569* precludes this case. Stated simply, *stare decisis* is the notion that today's Court should abide by yesterday's decisions. But this simplicity belies its gravity, for *stare decisis* is "a foundation stone of the rule of law" that "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 773-774 (7th Cir. 2024) (quoting *Michigan v. Bay Mills Indian Community*, 572 U.S. 782, 798 (2014) and *Payne v. Tennessee*, 501 U.S. 808, 827-828 (1991)).

Further, *stare decisis* "imparts authority to a decision . . . merely by virtue of the authority of the rendering court and independently of the quality of its reasoning." *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457 (7th Cir. 2005) (citations omitted). Absent a compelling reason, such as the prior decision being overruled by a higher court or statute, circuit precedent should be respected. *Wilson v. Cook Cnty.*, 937 F.3d 1028, 1035 (7th Cir. 2019). In short, that a case has been decided is the basis to resolve a materially identical case the same way. *Midlock*, 406 F.3d at 457.

Since *Siva*, no higher Court or statute has overruled it. In fact, while pre-dating *Siva*, all peer courts analyzing the issues at bar echo *Siva*. See *Kenney,*

847 F. App'x 137; *Ass'n of Am. Physicians & Surgeons, Inc.*, 15 F.4th at 832 ([Referring to *Twombly*, 550 U.S. 544] "Swap major telecommunications providers for hospitals, insurers, and the American Board of Medical Specialties . . . and you get this case.").

Thus, the straightforward question before this Court is whether *Siva* is "materially identical" to this case. It is, including, at the core level, the same:

- ABMS Member Board industry. Supp_A-10 at ¶21[1]; Dkt. 94 at ¶¶2, 24.

- Causes of action. Supp_A-62-75 at ¶¶277-372; Dkt. 94 at ¶¶185-251.

- Legal theory of illegal antitrust tying. Supp_A-5 at ¶2; Dkt. 94 at ¶ 10.

- Tying product of ABMS board certification. *Id.*, at ¶3; Dkt. 94 ¶10.

- Tied product of MOC. Supp_A-6 at ¶ 4; Dkt. 94 at ¶10.

- Competing second market of CMEs as a "substitute for" and "interchangeable with" MOC. *See, e.g.*, Supp_A-6, -8, -27 at ¶¶6, 12, 102; Dkt. 94 at ¶¶5, 199.

- Allegation of leveraging certification market power into the CME market. *See, e.g.*, Supp_A-6 at ¶5; Dkt. 94 at ¶10.

- Allegation of "economic necessity." Supp_A-70 at ¶328; Dkt. 94 at ¶ 4.

- "Forcing" allegations of certificates being "revoked." Supp_A-72 at ¶ 338; Dkt. 94 at ¶¶11, 186.

---

[1] "Supp_A" refers to the pages of Defendant's Supplemental Appendix attached to this brief.

The only ostensible difference is the term "CPD" in *Siva* versus "CME" here. This is a distinction without a difference, as the Plaintiffs' counsel here (and the same counsel in *Siva*) conceded: "The terms CME and CPD are sometimes used interchangeably or in tandem. . . ." Supp_A-27 at ¶102.

Additionally, the same attorneys drafted the *Siva* and *Lazarou* complaints and the *Lazarou* complaint appears to be merely a slightly edited version of *Siva*'s complaint, for example, failing to change "ABR" to "ABPN." *See* Dkt. 1 at ¶43. Not only are the legal theories identical, but large swaths of the allegations are either verbatim or substantively identical. *Compare* Dkt. 94 to Defendant's Supplemental Appendix, Supp_A-1 through A-79. There is simply no difference between the dismissed *Siva* complaint and the *Lazarou* second amended complaint. As Plaintiffs plead:

> … demonstrating the common interests of ABPN, ABMS, and the other ABMS Member Boards, especially with regard to their certification and CME MOC products. **It also confirms that ABMS and the other Member Boards speak for ABPN, and *vice versa*, about the purpose and goals of certification and their CME MOC products.**

Dkt. 94 at ¶42 (emphasis added).

This is especially notable as the *Lazarou* second amended complaint was filed *after* the *Siva* decision.

In sum, to ensure consistency and stability, s*tare decisis* bars overruling an appellate court decision without a compelling reason. *Bethesda Lutheran*

*Homes & Servs., Inc. v. Born*, 238 F.3d 853, 858-59 (7th Cir. 2001). No such

reason exists and this Court should affirm the dismissal with prejudice.

II.     MULTIPLE ALTERNATIVE GROUNDS EXIST TO AFFIRM THE DISMISSAL.

    A.     PLAINTIFFS' LEGAL THEORY IS PREMISED ON THE LOGICAL
         FALLACY OF FALSE EQUIVALENCE.

Plaintiffs' appeal turns on whether the ABPN's MOC program is both

interchangeable with and a substitute for accredited CME products required

to maintain physician licensure. A-8. However, Plaintiffs' entire theory of the

'interchangeability' of MOC and CME is based on a logical fallacy of false

equivalence. The Court should reject Plaintiffs' deconstructionist logic.

First, the products alleged to be tied are initial certification and MOC.

Dkt. 94. From this premise, Plaintiffs' argument unravels. Their

interchangeability assertion requires the deconstruction of MOC into just one

of its component parts. Specifically, Plaintiffs equate one part of MOC—the 66

Category 1 CME required credits part—to other Category 1 CME credits in the

medical licensure requirements context. This deconstructionist logic results in

a false comparison of third-party provided Category 1 CMEs in one context to

the exact same third-party provided Category 1 CMEs required in the MOC

context. The Board's MOC is a process of which the Category 1 CME credits

are but one requirement. MOC "is a much broader program in scope, in depth,

and in range [than certification and] is an overall comprehensive evaluation of practice involving multiple areas." Dkt. 94 at ¶93.

This fallacy is exposed when the comparison is corrected: the proper logical comparison in this context should be MOC to physician licensure (*i.e.*, the "product" towards which CMEs apply to maintain licensure). Under this accurate comparison, the question is whether MOC and state physician licensure are interchangeable; they clearly are not. A physician must be licensed to practice medicine. Dkt. 94 at ¶33. An unlicensed physician cannot substitute MOC for state licensure and practice medicine lawfully.

Next, Plaintiffs confuse the concept that MOC can be accepted in lieu of some CMEs by some state licensing boards with what a true interchangeability analysis should be, *i.e.,* is MOC required for state licensure in any state? Plaintiffs invoke the wrong product comparison and the wrong equivalency. Once the product comparison is corrected, the flaw in Plaintiffs' equivalency appears, as the district court explained:

> As in the first amended complaint, there are no allegations that any state requires MOC to maintain state licensure…. the fact that diplomates may use Category 1 credits obtained through MOC's Activity Requirement to satisfy state licensure requirements says nothing about whether a consumer would plausibly substitute MOC for other CME products in the first instance. This is because—as in *Siva*—MOC consists primarily of an obligation to purchase accredited CME content from third parties.
>
> A-15.

Plaintiffs have not pled, nor identified, any state medical board that requires MOC for the maintenance of physician licensure because none exist. This aligns with the district court's finding.

B.    MOC Is Not A Substitute For CMEs.

Plaintiffs fail to plead that MOC is a substitute for CMEs. As this Court recognized, merely stating that MOC is a CME product "is not enough." *Siva*, 38 F.4th at 578. Rather, Plaintiffs "must plead facts making it plausible that MOC is a substitute for other CPD products." *Id.* This requires plausible allegations of "cross-price elasticity," so that MOC and CMEs would be "reasonably interchangeable in the minds of relevant consumers." *Id.* But, rather than a CME price increase shifting sales to MOC, Plaintiffs allege the contrary, that MOC is worthless and would never be purchased regardless of the price of CMEs. Dkt. 94 at ¶¶88-98, 136-144.

Moreover, one reason the district court dismissed the first amended complaint was Plaintiffs' failure to "plausibly allege cross-price elasticity between MOC and other CPD products." Dkt. 87 at 11. Despite the court's clear roadmap, Plaintiffs' effort to remedy this shortcoming in the second amended complaint is exceedingly weak. Only a single, conclusory allegation. Dkt. 94 at ¶201. This is insufficient to be plausible. *See Ashcroft*, 556 U.S. at 678.

Finally, while Plaintiffs cite states that accept MOC to count "in full or partial" satisfaction of licensure CME requirements (Dkt. 94 at ¶35), Plaintiffs

avoid the nuance that almost all such states allow MOC to count towards licensure CME requirements only in the year the physician is 'recertified' or has completed the ABPN's 10-year MOC process. *See, e.g.,* Iowa Admin. Code R. 653-11.2(2); 653-11(4)(1) ("may accept certification or recertification … [only] *during the cycle in which the certification or recertification is granted*.") (emphasis added). In other words, once every 10 years, after a physician has completed the MOC's required 198 accredited Category 1 CME credits (*i.e.*, 3 mandatory 3-year cycles of 66 credits), may the physician be credited (using Iowa as an example) 50 hours of CME credits towards licensure. This at no level demonstrates the interchangeability of the ABPN's 10-year MOC process to individual CME credits needed annually for state licensure.

Despite the ABPN raising this issue in its motion to dismiss the second amended complaint, (Dkt. 106 at 4-6), Plaintiffs ignore those states that prohibit MOC consideration. The anti-interchangeability of MOC and state licensure (or even CMEs under Plaintiffs' fallacious product comparison and equivalency outlined above) is laid bare by the influx of states that prohibit the consideration of MOC for maintaining physician licensure.[2] As an example:

---

[2] Fifteen states have enacted so-called anti-MOC legislation: Arizona (Arizona Revised Statutes, Title 32 § 32-1835); Arkansas (Ark. Code Ann. § 17-95-413(b) (West)); Georgia (Ga. Code Ann. § 43-34-46(b) (West)); Kentucky (Ky. Rev. Stat. Ann. § 311.566(2) & (3) (West)); Maine (Me. Rev. Stat. tit. 32, § 3271(2)); Maryland (Md. Code Ann., Health Occ. § 14-322 (West)); Michigan (Mich. Comp. Laws Ann. § 333.16147 (West)); Missouri (Mo. Ann. Stat. § 334.285(3) (West)); North Carolina (N.C. Gen. Stat. Ann. §§ 90-8.1(b) and -13.2(h)); North Dakota (N.D. Cent. Code § 23-

- "The board shall not deny a physician licensure based on a physician's non-participation in any form of maintenance of licensure, including requiring any form of maintenance of licensure tied to maintenance of certification." Tenn. Code Ann. § 63-9-123(4)(b) (West).

Further, the MOC is not a requirement for physician licensure in any state. *See Afzal v. Am. Bd. of Internal Med.*, No. CV 22-86, 2022 WL 180218, at *3 (E.D. Pa. Jan. 20, 2022) ("Board certification is not required to practice medicine in the United States"). Indeed, consideration of MOC status is prohibited in many jurisdictions. If MOC and state licensure (or CMEs) were truly interchangeable in the marketplace, no state would prohibit the consideration of MOC for licensure maintenance.

Finally, Plaintiffs admit that the ABPN only provides access to its MOC program to those currently certified. Dkt. 94 ¶97. This, despite MOC allegedly causing ABPN revenue to increase exponentially. Dkt. 94 at ¶146. If the ABPN's MOC program was just a substitute for other CME products, the ABPN would at least try 'selling' MOC to non-certified physicians to generate more revenue. In short, neither buying CMEs alone will achieve certification nor would 'buying' MOC provide yearly state physician licensing. MOC thus cannot be a substitute for nor interchangeable with CMEs.

---

16-18); Oklahoma (Okla. Stat. Ann. tit. 59, § 492(g) (West)); South Carolina (S.C. Code Ann. § 40-47- 38(a)); Tennessee (Tenn. Code Ann. § 63-9-123(4)(b) (West)); Texas (Tex. Occ. Code Ann. § 155.003(d-1) (West)); and Washington (Revised Code of Washington, Title 18, Chapter 18.71, Section 18.71.083).

C.　　PLAINTIFFS CANNOT ALLEGE THAT THE ABPN HAS ANY
　　　FINANCIAL INTEREST IN ANY ACCREDITED CME PRODUCT.

In dismissing the first amended complaint, the district court gave Plaintiffs explicit direction to plausibly allege the "ABPN has any financial interest in the items that appear on the 'approved products list'" or, as *Siva* stated, a financial stake in the CME products. Dkt. 87 at 14; *Siva*, 38 F.4th at 579. Plaintiffs failed to do so. Instead, Plaintiffs argued that "ABPN has a substantial financial stake *in MOC*." Dkt. 104 at 9 (emphasis added). This argument misconstrues the articulated requirement to plausibly demonstrate ABPN's financial stake in other CME products.

Here, as in *Siva*, there is "no indication in the complaint that the Board itself produces, offers, or otherwise has a financial stake in any accredited CME products." *Siva*, 38 F.4th at 579. Instead, MOC's CME aspect is a requirement that its Diplomates purchase CME products from other providers. *See id.*

D.　　PLAINTIFFS HAVE FAILED TO PLAUSIBLY PLEAD ACTUAL COERCION
　　　OR FORCE.

To survive dismissal, Plaintiffs need plausible allegations of "forced purchase." *See Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 21 n.31 (1984), *abrogated by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ("The common core of . . . unlawful tying arrangements is the forced purchase of a second distinct commodity"). In dismissing the first amended complaint, the district court stated that Plaintiffs' allegation that psychiatrists

and neurologists are "compelled to purchase MOC because of the adverse economic consequences that would result from a revocation of the certification . . . and *not by the ABPN itself,*" indicates that Plaintiffs are free to purchase initial certification without MOC. Dkt. 87 at 20 (emphasis added).

This defect identified in the prior complaints continued to infect the second amended complaint. Plaintiffs once again pled that the adverse consequences of not maintaining Board certification are imposed by third parties like hospitals and insurance companies. *See, e.g.*, Dkt. 94 at ¶¶52-57, 64-70, 72. However, requirements by third parties do not constitute force or coercion. *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1383-84 (7th Cir. 1992); *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989). Absent forcing, there can be no illegal tying.

Moreover, ABPN certification is not an economic necessity. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 977 F.2d 585, *6-7 (7th Cir. 1992) (unpublished) (no antitrust restraint because membership not necessary to receive medical license and because defendant had no authority over third parties to affect same). The arrangement is therefore innocuous from an antitrust perspective. *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. 14-CV-02705, 2020 WL 5642941, at *3 (N.D. Ill. Sept. 22, 2020), *aff'd,* 15 F.4th 831 (7th Cir. 2021) ("None of the state medical boards require purchase of or participation in MOC.") *Kaneria v. Am. Bd. of Psychiatry*

*& Neurology, Inc.*, 832 F. Supp. 1226, 1230 (N.D. Ill. 1993) ("it appears that the tangible benefits of Board certification, although economically desirable (*e.g.,* a 7.8% increase in salary, performance as an expert witness, etc.), clearly do not rise to the level of 'economic necessity.'").

### E.    THE ABPN IS NOT A COMPETITOR IN THE CME MARKET.

For Plaintiffs' tying claims to survive, Plaintiffs must plausibly allege that MOC is a CME product that competes on the merits in that separate CME market. *Siva*, 38 F.4th at 573-74, 578. Plaintiffs have not. Like *Siva*, Plaintiffs contend that MOC is effectively useless (Dkt. 94 at ¶¶136-144), "only 12 percent of doctors . . . value[] MOC (*Id.* at ¶140), and is of "no 'significant value'" (*Id.* at ¶142). Such contentions confirm that no physician shopping for CME products would voluntarily purchase MOC. *Siva*, 38 F.4th at 580. Therefore, the products are not substitutes. *Id.*

## III.    PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD.

Finally, Plaintiffs seek the opportunity to replead a fourth complaint because the second amended complaint was their first opportunity to address *Siva* and "[w]hether MOC was plausibly alleged to be a CME product was not raised by ABPN [sic] or the District Court [sic] below prior to *Siva*." *See* Appellants' Br. at 53. Plaintiffs' request falters for three reasons.

First, the second amended complaint was not the first opportunity for Plaintiffs to address *Siva*. The same attorneys who pled this suit pled and

appealed *Siva* (as well as the dismissed case of *Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137). Thus, *Siva* itself was Plaintiffs' first opportunity to plausibly plead a cause of action. Moreover, as explained above, while the ABPN's motion to dismiss the first amended complaint was pending, the district court requested supplemental briefing on *Siva*. Dkt. 83. The district court then dismissed with leave to amend because:

> Plaintiffs have represented that they may add additional allegations that are consistent with the Seventh Circuit's decision in *Siva*. **Based on these representations, we find it appropriate to give Plaintiffs one final opportunity to amend their complaint.**

Dkt. 87 at 22-23 (emphasis added).

Second, while Plaintiffs are correct that neither the ABPN nor the district court alleged MOC to be a CME product, the Plaintiffs did repeatedly. In the initial complaint, Plaintiffs averred that MOC requirements are "redundant of the CME credits" required for licensure and that "MOC serves substantially the same function as CME." Dkt. 1 at ¶¶43, 72. In dismissing the complaint, the district court analyzed whether MOC is a CME product. Dkt. 60 at 2-4. In the first amended complaint, Plaintiffs alleged MOC occupies the same product market and serves the same purpose as CPD products (or CMEs). Dkt. 63 at ¶¶6-9, 11, 34. When the district court dismissed the first amended complaint, it analyzed whether MOC is a CME product. Dkt. 87 at 4, 9-14. The entire gravamen of the second amended complaint was that MOC is a CME

product. *See generally*, Dkt. 94. In dismissing the second amended complaint, the district court again analyzed whether MOC is a CME product. Dkt. 108 at 3-4, 6-19. Finally, in *Siva* the same counsel argued that MOC was a CPD product. *See Siva*, 38 F.4th at 574, 580.

Third, Plaintiffs have not met their burden of meeting the high legal standard of abuse of discretion. *See Jauquet*, 996 F.3d at 807. Other than parroting the principle that leave to amend should be freely granted, Plaintiffs point to nothing demonstrating the district court abused its discretion. Nor could they. In dismissing with prejudice, the district court explained:

> A district court is not required to grant leave to amend 'when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted.' *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 347 (7th Cir. 2012).

A-20.

When a lower court provides a reasonable explanation for the dismissal with prejudice, as it did here, the reviewing court "will not reverse a district court's decision." *DJM Logistics, Inc. v. FedEx Ground Package System, Inc.*, 39 F.4th 408, 414 (7th Cir. 2022).

## CONCLUSION

Based on the record, *stare decisis*, and reasons presented above, the ABPN respectfully asks this Court to affirm the dismissal with prejudice of Plaintiffs' second amended complaint.

<div style="margin-left: 50%;">

Respectfully submitted,

**On Behalf of The American
Board of Psychiatry
and Neurology, Inc.**

</div>

Dated: September 30, 2024　　　　By: /s/　　Christopher B. Sullivan
Christopher B. Sullivan
Mitchell Barlow & Mansfield, P.C.
Boston Building
Nine Exchange Place, Suite 600
Salt Lake City, Utah 84111
(801) 998-8888
csullivan@mbmlawyers.com

Christopher Keleher
The Keleher Appellate Law Group
1 East Erie, Suite 525
Chicago, Illinois 60611
(312) 448-8491
ckeleher@appellatelawgroup.com

Darryl Tom
Anne I. Shaw
Shaw Legal Services, Ltd.
540 W. Briar Place, Unit B
Chicago, Illinois 60657
(312) 549-9500
dtom@shawattorneys.com
ashaw@shawattorneys.com

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULES 32(a)(7) & 32(g), and CIRCUIT RULE 32(c)

The undersigned, counsel for the Appellee, furnishes the following in

compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the provisions of F.R.A.P. Rule

32(a)(7) for a brief produced with a monospaced font. The length of this brief is **5,194**

words according to the Microsoft word count function.


By: /s/ Christopher B. Sullivan
　　　Christopher B. Sullivan
　　　Mitchell Barlow & Mansfield, P.C.
　　　Boston Building
　　　Nine Exchange Place, Suite 600
　　　Salt Lake City, Utah 84111
　　　(801) 998-8888
　　　csullivan@mbmlawyers.com

**PROOF OF SERVICE**

The undersigned, counsel for the Appellee, certifies that I have served a copy

of the Appellee's Brief upon all counsel of record through the Court's electronic filing

system on September 30, 2024.

<u>s/ Christopher Keleher</u>

Christopher Keleher
The Keleher Appellate Law Group
1 East Erie Street, Suite 525
Chicago, Illinois 60611
(312) 448-8491
ckeleher@appellatelawgroup.com